The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 17, 2020

**2020COA138**

**No. 19CA0266, *Lodge Properties v. Eagle County Board of Equalization* — Taxation — Property Tax — Actual Value — Income Approach — Intangible Personal Property Exemption**

A division of the court of appeals considers, for the first time,

whether condo net income generated from rentals of individually

owned condominium units to transient guests should be included

in a real property's actual value under the income approach

valuation method. Because such income qualifies as a stream of

revenue and not an intangible asset, the division concludes that

condo net income should be included under the income approach.

The Eagle County Board of Equalization appeals the ruling of the

Board of Assessment Appeals in favor of Lodge Properties, Inc.,

reducing Lodge Properties' property tax assessment for its luxury

resort facility. Because the division concludes that the Board of

Assessment Appeals abused its discretion when it excluded condo net income from the resort's actual value, the division vacates the order and remands the case for determination of the resort's actual value with the inclusion of condo net income.

COLORADO COURT OF APPEALS **2020COA138**

Court of Appeals No. 19CA0266
Board of Assessment Appeals Case No. 70454

Lodge Properties, Inc.,

Petitioner-Appellee,

v.

Eagle County Board of Equalization,

Respondent-Appellant,

and

Board of Assessment Appeals,

Appellee.

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE PAWAR
Román and Tow, JJ., concur

Announced September 17, 2020

Brownstein Hyatt Farber Schreck, LLP, Justin L. Cohen, Julian R. Ellis,
Denver, Colorado, for Petitioner-Appellee

Bryan Treu, County Attorney, Christina Hooper, Assistant County Attorney,
Eagle, Colorado; Hoffmann, Parker, Wilson & Carberry, P.C., M. Patrick Wilson,
Ruth H. Goff, Denver, Colorado, for Respondent-Appellant

Philip J. Weiser, Attorney General, John August Lizza, First Assistant Attorney
General, Denver, Colorado, for Appellee

¶ 1 In this property tax assessment case, we consider for the first time whether income generated from rentals of individually owned condominium units to transient guests of an adjoining hotel should be included in the hotel's actual value under the income approach valuation method. Because such income qualifies as a stream of revenue and is not an intangible asset, we conclude that this income should be included under the income approach.

¶ 2 Respondent, the Eagle County Board of Equalization (BOE), appeals the ruling of the Board of Assessment Appeals (BAA) in favor of petitioner, Lodge Properties, Inc. (Lodge), reducing Lodge's property tax assessment for its luxury resort facility. The BOE argues that the BAA abused its discretion when it excluded the additional income from the resort's actual value and, as a result, the BAA improperly valued the property for tax purposes. We agree and vacate and remand the BAA's order.

## I. The Property

¶ 3 Lodge, a subsidiary of Vail Resorts, Inc., owns a luxury resort known as the Lodge at Vail Resort and Hotel (LAV). The LAV property is located at the base of Vail's ski-area and consists of approximately 160 guest rooms. The guest rooms include eighty

1

"traditional" hotel rooms owned by Lodge and seventy-four privately owned residential condominium units, established in 1970 through a declaration of covenants. Because the condo units are physically connected to and integrated within the LAV property, LAV regularly uses them as hotel rooms, with transient guests unaware of the rooms' actual owners.

¶ 4 Vail Resorts has other subsidiaries: RockResorts International, LLC (RockResorts), and Vail/Beaver Creek Resort Properties, Inc. (VBC). RockResorts manages LAV's day-to-day hotel operations, as well as LAV's homeowner association (HOA), which collects dues from the condo owners to cover costs associated with certain common areas shared with LAV. RockResorts provides administrative and management services to the HOA and does not charge Lodge a fee for doing so.

¶ 5 RockResorts and VBC provide rental management services to more than two-thirds of LAV's condo owners, with the remaining condo owners either not renting at all or engaging a third-party for this service. VBC contracts with condo owners to rent their condos to transient guests, and RockResorts manages the "LAV Rental Program," under which the condos are managed and operated "as

rental units within the hotel." Per the terms of the "LAV Rental Program" contracts, if Lodge were to sell LAV, VBC may assign its rights under the contracts to the purchaser of LAV without the condo owners' consent.

¶ 6     VBC pays all marketing and administrative costs of the rental management program and, in return, retains a 40% share of the gross rental proceeds from the condos it manages. Some revenues from the condo rentals, such as parking, LAV food and beverage services, and hotel resort fees, are the "sole property of VBC" and are not included in the split of gross rental proceeds.

¶ 7     Neither RockResorts nor VBC maintains separate financial statements for the condo operations at LAV. And the revenues from Lodge, RockResorts, and VBC all contribute to Vail Resorts' net income.

¶ 8     Due to the contiguous nature of the LAV condos and hotel rooms, reciprocal easements exist for utilities, structural support, and access between the two structures on the property. Additionally, LAV hotel employees serve the condos and, to do so, have the right to access the service, linen, mechanical, and storage rooms located in the condo building.

¶ 9    Through a development agreement executed in 2006, all LAV

guests, whether they are staying in a "traditional" hotel room or a

condo, have the right to access all of LAV's amenities.  These

amenities include food and beverage services, internet access,

pools, hot tubs, exercise facilities, spas, and other facilities.  Lodge

collects a nominal "hotel resort fee" from all transient guests to

cover the costs it incurs in providing these amenities.  Hotel resort

fees are collected separately and are not part of the "LAV Rental

Program."

## II.  Procedural Background

¶ 10    For the tax year 2017, the Eagle County assessor assessed

LAV's taxable real property at $41,104,470.  For its valuation, the

county included VBC's net operating income from the rental

management services it provides to the LAV condos (hereinafter

referred to as condo net income).  Lodge contested the assessment,

and the BOE denied its petition.  Lodge then appealed the

assessment to the BAA, arguing that the inclusion of condo net

income in determining the actual value of LAV was improper and that the applied capitalization rate was incorrect.[1]

¶ 11     At a hearing on the matter, the BAA considered expert testimony from Lodge and the BOE regarding the actual value of LAV.  Lodge's appraiser placed the actual value of LAV at $20,477,400 ($22,800,000 minus $2,322,560 of personal property, rounded).  He excluded all amounts he considered intangible property and "property management revenue," including condo net income and the hotel resort fees collected by Lodge.  The appraiser opined that condo net income is an intangible asset that must not be included in a property tax valuation.  In order to arrive at an actual value that excluded condo net income and hotel resort fees, Lodge's appraiser adjusted LAV's financial statements "to reflect a free-standing hotel operation without influence from the third-party rental agreement."

¶ 12     Separately, the BOE's appraiser asserted that the actual value of LAV is $44,335,840 ($46,658,395 minus $2,322,560 of personal property, rounded).  This value includes condo net income (condo

_____

[1] The capitalization rate is not at issue on appeal.

rental revenues of $3,626,383 minus "property management expenses" attributable to the condos). The BOE's appraiser included condo net income because, as he explained, it is derived from ownership of the LAV property and is, therefore, a direct benefit to the owner of LAV that would transfer with a sale of the property.

¶ 13  In support of its valuation, the BOE also presented Peter F. Korpacz as an expert appraiser on the analysis of market behavior in connection with hotel valuation and proper evaluation methodologies. Mr. Korpacz testified to findings he made in his 2016 "Resort-Hotel Valuation Methodology Study for Eagle County, Colorado" (Valuation Study), as well as the application of an article he co-authored with a committee of the International Association of Assessing Officers (IAAO), *Understanding Intangible Assets and Real Estate: A Guide for Real Property Valuation Professionals* (IAAO Guide). Mr. Korpacz opined that condo net income is a real estate ownership benefit that is properly factored into acquisition pricing; it is not a business income or an intangible asset.

¶ 14  In its order, the BAA concluded that Lodge presented sufficient probative evidence and testimony to prove that the BOE's 2017 tax

valuation of LAV was incorrect. In so concluding, the BAA determined that condo net income should not be included for valuation purposes because it is an intangible asset that must be excluded from the calculation of LAV's actual value. The BAA ordered the BOE to reduce the 2017 actual value of LAV to $26,245,000 ($28,567,335 minus $2,322,560 of personal property, rounded). The BOE now appeals the BAA's decision.

¶ 15      On appeal, the BOE asserts three main challenges to the BAA's order; specifically, the BAA erred when it (1) determined that a real property's actual value is different from its market value for tax valuation purposes; (2) concluded that condo net income is an intangible asset and therefore excludable when establishing a real property's actual value; and (3) relied on Lodge's expert appraiser's adjusted financial statements that separated the "traditional" hotel room operations from the condo operations and excluded hotel resort fees collected from LAV guests. We agree and, consequently, vacate the BAA's order.

### III. Standard of Review

¶ 16      We review the BAA's factual findings for abuse of discretion and its legal conclusions de novo. *Cantina Grill, JV v. City & Cty. of*

*Denver Bd. of Equalization*, 2015 CO 15, ¶ 15. The BAA, not the reviewing court, is tasked with weighing the evidence and resolving any conflicts. *Id.* The BAA's order may be set aside, however, if it is unsupported by substantial evidence in the record or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27, 34 (Colo. 1990).

## IV. LAV's Actual Value Is Synonymous with Its Market Value

¶ 17   The BOE initially contends that the BAA erred in its valuation of LAV when it incorrectly created a separate standard for calculating the actual value of real property for tax purposes. We agree.

¶ 18   Property valuations for tax assessment are based on the property's actual value in a statutorily mandated base year and the property's character. § 39-1-103(5)(a), C.R.S. 2019; *Bd. of Assessment Appeals v. Colo. Arlberg Club*, 762 P.2d 146, 148 (Colo. 1988). "[A]ctual value is the guiding principle for the taxation of real property in Colorado." *San Miguel Cty. Bd. of Equalization v. Telluride Co.*, 947 P.2d 1381, 1383 (Colo. 1997).

¶ 19    A property's actual value is synonymous with market value. *Bd. of Assessment Appeals v. Sampson*, 105 P.3d 198, 203 (Colo. 2005). "[M]arket value is 'what a willing buyer would pay a willing seller under normal economic conditions.'" *Arlberg*, 762 P.2d at 151 (quoting *May Stores Shopping Ctrs., Inc. v. Shoemaker*, 151 Colo. 100, 110, 376 P.2d 679, 683 (1962)). In other words, market value is

> [t]he most probable price in cash, terms equivalent to cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

*Id.* at 151 (quoting American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 21 (8th ed. 1983)).

¶ 20    In its determination of value, the BAA reasoned that condo net income is an intangible asset excludable from LAV's actual value because, "while it might be considered in the valuation of a property *outside of taxation*, [it] did not reflect additional value to the subject real estate." (Emphasis added.) In so reasoning, the BAA erred.

9

¶ 21 The BAA derived a standard for calculating the actual value of property for tax purposes that is separate from the standard used for other financial purposes. However, our legislature "has never indicated that it intended the words . . . 'market value' to be given any special meaning for tax purposes." *Arlberg*, 762 P.2d at 152. And because market value is synonymous with actual value, *Sampson*, 105 P.3d at 203, the BAA is not permitted to assign a special meaning to actual value for tax purposes. In doing so, the BAA failed "to abide by the statutory scheme for calculating property tax assessments." *See E.E. Sonnenberg*, 797 P.2d at 34.

¶ 22 It follows that the actual value of LAV must be measured by its market value — "what a willing buyer would pay a willing seller under normal economic conditions." *Arlberg*, 762 P.2d at 151 (quoting *Shoemaker*, 151 Colo. at 110, 376 P.2d at 683). Therefore, to determine LAV's market value, we must ask whether the stream of income generated from the operation of the condos "as rental units within the hotel" would be a factor considered by a willing buyer and willing seller of LAV.

¶ 23 The BAA implicitly answered "no" to this question when it found that "any contributory value of [condo net income] . . . would

10

not transfer with [LAV] in the event of sale" because VBC, "which generates revenue from rental management for outside condominium owners[,] is a separate legal entity from [Lodge]." We conclude that this finding is unsupported by substantial evidence in the record.

¶ 24     As we noted above, the rental contracts between individual condo owners and VBC are assignable. That is, if Lodge sells LAV, VBC can assign the rental contracts to the purchaser without the condo owners' consent. And although Lodge's expert in lodging accounting testified that, upon sale of LAV, VBC "could retain those contracts or the new owner of the hotel could also pursue them," we are hard-pressed to believe that a purchaser of LAV would agree to the sale without also securing the rental contracts that would allow it to collect over $3.6 million in rental revenue. Condo net income therefore provides an income stream to VBC, and ultimately to Vail Resorts, that can transfer with a sale of the LAV property.

¶ 25     Moreover, the BOE's expert appraiser testified that, based on his market research, condo net income is properly included under the income approach for calculating actual value because condo net income is derived from ownership of the LAV property and is,

11

therefore, a direct benefit to the owner of LAV. He opined that if LAV were to be placed on the market for sale, condo net income is "a stable income stream that a buyer and seller would each consider as a benefit to the owner of the real property." In support of this, the appraiser testified that there have been a "number of sales transactions where they have marketed [the hotel/resort] for sale, including [the condo net income] real estate stream, and the buyer of that property paid the seller for the right to that income stream." He also testified that condo net income is not the only benefit for the owner of LAV but that, "[b]esides the management fee, all the other returns that that property generates goes to the owner of the real property." He explained that these other returns include revenues generated from amenities such as LAV's spas, restaurants, and room service.

¶ 26 Given this evidence — that condo net income would be transferable with the sale of LAV — we conclude that condo net income should be included in LAV's actual/market value for financial purposes, including property tax calculations.

¶ 27    With that in mind, we next turn to the question of whether condo net income is an intangible asset and therefore must be excluded from the actual value determination.

## V.  Condo Net Income Is Not an Intangible Asset

¶ 28    The BOE contends that the BAA erroneously classified condo net income as an intangible asset.  Instead, the BOE asserts, because it is an identifiable, measurable, and continual source of revenue, condo net income is not an intangible asset, and the BAA failed to abide by the statutory scheme for calculating property tax assessments by excluding it from the actual value determination. We agree.

## A.  Applicable Law

¶ 29    The actual value of real property is determined by "appropriate consideration of the cost approach, the market approach, and the income approach to appraisal." § 39-1-103(5)(a).  However, one or more of these three approaches may not be applicable in a particular case.  *E.E. Sonnenberg*, 797 P.2d at 35.  It is undisputed that both appraisers in this case used the income approach as their valuation method.

¶ 30    The income approach "is a common method for calculating the value of commercial properties, especially apartment buildings, office buildings and shopping centers." *Id.* at 30 n.8. This method "generally involves calculating the *income stream (rent) the property is capable of generating*, capitalized to value at a rate typical within the relevant market." *Id.* (emphasis added). Property classified as intangible is to be excluded from the actual value calculation under the income approach. § 39-3-118, C.R.S. 2019.

## B. Analysis

¶ 31    We conclude that the BAA erred when it excluded condo net income — a measurable, identifiable source of income for LAV — from its actual value calculation, as an intangible asset. Condo net income is clearly an "income stream (rent)" that LAV "is capable of generating," *E.E. Sonnenberg*, 797 P.2d at 30 n.8, and is not an intangible asset that adds no value to the property.

### 1. The Appraisers' Testimony

¶ 32    As noted above, both expert appraisers utilized the same methodology to value LAV — the income approach. Where they diverged was in their determinations as to whether condo net income should be included in the income that was capitalized to

14

reach a value.[2]  Lodge's experts excluded condo net income, and the BOE's experts included it.

¶ 33     Lodge's expert real estate appraiser testified that condo net income should be excluded as an intangible asset.  He testified that he applied a four-part test outlined in the IAAO Guide[3] to determine that condo net income is intangible, largely because it is separable and divisible from LAV, and the rental management contracts are transferable.  In citing his appraisal report, the expert testified that condo net income is not attributable to the LAV real property, and "the revenues associated with the third-party rental programs

---

[2] Application of the income approach entails applying a capitalization rate to net income to achieve the taxable value of the property.  *Microsemi Corp. v. Broomfield Cty. Bd. of Equalization*, 200 P.3d 1123, 1125 (Colo. App. 2008).  "Capitalization is simply a process of converting future monetary benefits of owning property into a value of present worth."  *Id.* (citing International Association of Assessing Officers, *Property Assessment Valuation* 231 (1977)).

[3] The IAAO Guide "is intended to assist assessors in understanding and addressing intangible assets in property tax valuation." International Association of Assessing Officers, *Understanding Intangible Assets and Real Estate: A Guide for Real Property Valuation Professionals* 1 (2017), https://perma.cc/ECU8-T7YG. The four-part test from the IAAO Guide states that an intangible asset should (1) "be identifiable"; (2) "have evidence of legal ownership, that is, documents that substantiate rights"; (3) "be capable of being separate and divisible from the real estate"; and (4) "be legally transferrable."  *Id.* at 2.

15

represent intangible interest, contractual rights only." He further explained that he treated condo net income as intangible property for this appraisal because his firm has historically done so, pursuant to the direction of senior leadership.

¶ 34 Relatedly, Vail Resorts' director of finance, who was offered as Lodge's expert in lodging accounting, testified that condo net income is excludable under the income approach because VBC is a "property management segment that runs the third-party condos . . . separate from the hotel business" and that VBC, not Lodge, receives the condo net income.

¶ 35 Conversely, the BOE's expert appraiser testified that condo net income is not an intangible asset because the condo operations are not separable or divisible from the LAV property. He went on to explain that excluding condo net income is an overly complex exercise to remove revenues that go to Lodge, as well as expenses that "are so intertwined throughout the entire hotel operation," which ultimately results in "something that doesn't represent the actual property at all."

¶ 36 A co-author of the IAAO Guide, Mr. Korpacz, also testified on behalf of the BOE. He testified that the IAAO Guide's four-part test

for identifying intangible assets, on which Lodge's experts relied, "has to do with how accountants treat the subject" and not "how the real estate industry does." But he explained that the IAAO wanted to include it in the guide "so assessors could understand what might be brought to their attention in terms of *trying to reduce taxes in a way that's not consistent with market behavior*." (Emphasis added.) Mr. Korpacz also testified to the results of his Valuation Study, explaining that the purpose of the study was to illustrate the use of industry-standard methodologies and real estate market behavior in valuing hotel/resort properties. Through his study, Mr. Korpacz ascertained that comparable hotel/resort market-participants consider condo net income to be real estate income, and not an intangible asset.

## 2. The BAA's Findings

¶ 37 The BAA concluded that condo net income "constituted an intangible asset that, while it might be considered in the valuation of a property outside of taxation, did not reflect additional value to [LAV]." Having determined that the BAA erred in rejecting the principle that actual value and market value are synonymous for tax valuation purposes, we next consider whether the BAA erred in

17

finding that condo net income is an intangible asset and therefore excludable from the property valuation.

¶ 38    To resolve that question, we first look to the definitions of "intangibles" provided by Black's Law Dictionary.  In relevant part, Black's Law Dictionary includes the following:

1.    Intangible asset: "Any *nonphysical* asset or resource that *can be amortized or converted to cash*, such as patents, goodwill, and computer programs, or a right to something, such as services paid for in advance."  Black's Law Dictionary (11th ed. 2019) (emphasis added).

2.    General intangible: "Any personal property *other than* accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, *money*, and oil, gas, or other minerals before extraction.  Some examples are goodwill, things in action, and literary rights."  *Id.* (emphasis added).

3.    Intangible property: "Property that *lacks a physical existence*.  Examples include stock options and business goodwill."  *Id.* (emphasis added).

¶ 39    Evaluating the nature of condo net income under these definitions, we cannot conclude that it qualifies as an "intangible asset," "general intangible," or "intangible property." Condo net income does not "lack a physical existence," nor is it a "nonphysical asset or resource that can be amortized or converted to cash." *See id.* Condo net income is, in fact, cash; it is a tangible, inherent benefit in the form of money that is a direct product of the core income-producing business of LAV. We do not perceive a readily identifiable and measurable stream of income such as condo net income as equivalent to things like patents, business goodwill, computer programs, literary rights, and stock options. All of this leads us to conclude that a revenue stream like condo net income is not an intangible asset for tax purposes. Moreover, excluding this tangible, measurable, and readily identifiable stream of income would undermine the foundation of the income approach to valuation — i.e., the capitalization of such income streams attributable to property ownership.

¶ 40    Not only is condo net income a measurable, identifiable revenue stream that contributes to Vail Resorts' bottom line, but it is also an income stream that is directly attributable to the LAV

19

property.  The ability of the LAV property, including the condos, to generate income is largely due to the integrated nature of the resort. The condos are physically connected to and integrated with the rest of the LAV resort to such an extent that transient guests are unaware of the distinction between the condos and "traditional" hotel rooms.  All condo guests enjoy the same amenities and privileges as "traditional" hotel guests and, as undisputed by Lodge and the BOE, are likely attracted to LAV for this reason.  To guests, the condos merely represent an extension of the LAV resort property.  Indeed, LAV is specifically marketed to the public as a luxury resort with 165 guest rooms, despite the fact that almost half of those rooms are privately owned condos.  Moreover, RockResorts and VBC manage the condos "as rental units within the hotel," and the condo guests are not separately identified for RockResorts' and VBC's financial statement purposes.

¶ 41     Accordingly, the BAA's finding that condo net income is intangible because it does not reflect additional value to LAV is not supported by substantial evidence.  Nor does the BAA's finding comport with the statutory scheme for calculating property tax assessments, as the evidence demonstrates that condo net income

20

is an identifiable and measurable stream of income attributable to the LAV real property. Finally, as we concluded above, condo net income should be included in LAV's actual/market value valuation as it would certainly be relevant in determining "what a willing buyer would pay a willing seller under normal economic conditions." *Arlberg,* 762 P.2d at 151 (quoting *Shoemaker,* 151 Colo. at 110, 376 P.2d at 683).

¶ 42 We therefore conclude that the BAA's order must be vacated and remanded for the BAA to determine LAV's actual value with the inclusion of condo net income.

## VI. Exclusion of Hotel Resort Fees Was Improper

¶ 43 The BOE also contends that the BAA erroneously excluded hotel resort fees from its valuation by relying on "free-standing hotel operation" financial statements from Lodge's expert. We agree that the BAA should have included hotel resort fees as a revenue stream under the income approach to LAV's valuation.

¶ 44 The BOE's expert appraiser testified, and Lodge's appraisal report concedes, that Lodge's valuation of LAV was based on adjusted income and expense statements that, in part, excluded hotel resort fees. According to Lodge's expert appraiser, Lodge

collects resort fees — a $30 additional charge on top of the nightly rate — from *all* LAV guests to cover the expenses Lodge incurs in providing the guests with free amenities like WiFi and access to the pool, fitness center, and ski valet.  The resort fees go directly to Lodge and not through the "LAV Rental Program."  Moreover, the BOE's appraisal expert testified that removal of resort fees paid by guests for the use of LAV is improper, and Lodge's expert appraiser indicated that he was unaware that resort fees had been excluded from the financial statements.

¶ 45    Based on this evidence, it is clear that hotel resort fees are a revenue stream directly generated by LAV and should, therefore, be included under the income approach to LAV's valuation.  *See E.E. Sonnenberg*, 797 P.2d at 30 n.8.

¶ 46    We conclude, therefore, that the BAA erred in excluding hotel resort fees in its calculation of LAV's actual value.

VII.  Conclusion

¶ 47    We vacate the BAA's order and remand the case for proceedings consistent with this opinion.

JUDGE ROMÁN and JUDGE TOW concur.