23CA1299 Lodge v Eagle County 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1299 Board of Assessment Appeals Case No. 70454 Lodge Properties, Inc., Petitioner-Appellee, v. Eagle County Board of Equalization, Respondent-Appellant and Board of Assessment Appeals, Appellee. ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS Division III Opinion by JUDGE DUNN Yun and Moultrie, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Bryan Cave Leighton Paisner LLP, Michael J. Hofmann, Kaitlin M. DeWulf, Denver, Colorado; Brownstein Hyatt Farber Schreck, LLP, Justin L. Cohen, David B. Meschke, Denver, Colorado, for Petitioner-Appellee Bryan Treu, County Attorney, Christina Hooper, Deputy County Attorney, Eagle, Colorado; Hoffmann, Parker, Wilson & Carberry, P.C., M. Patrick Wilson, Denver, Colorado, for Respondent-Appellant 
Philip J. Weiser, Attorney General, John August Lizza, First Assistant Attorney General, Evan P. Brennan, Assistant Attorney General, Denver, Colorado, for Appellee 
1 ¶ 1 This is the second appeal to this court in a property tax dispute between Lodge Properties, Inc. (LPI), and the Eagle County Board of Equalization (the County). We must decide whether, on remand from the first appeal, the Board of Assessment Appeals (the BAA) followed the law of the case. Because we conclude that the BAA did not do so, we reverse the BAA’s order and remand with directions. I. Factual and Procedural Background A. The Property ¶ 2 LPI, a subsidiary of Vail Resorts, Inc., owns the Lodge at Vail (the Lodge), a full-service, luxury resort located at the base of the Vail Mountain Ski Area.
1 The Lodge has eighty hotel rooms owned by LPI. ¶ 3 The Lodge also has seventy-four privately owned condominium units. Some — but not all — of the private owners rent their condominiums to the public for a fee. To manage the rental 1 We relay only the facts and procedural history relevant to this appeal. For a full history, see generally Lodge Properties, Inc. v. Eagle County Board of Equalization, 2020 COA 138, rev’d, 2022 CO 9, and Lodge Properties, Inc. v. Eagle County Board of Equalization, 2022 CO 9. 
2 process, many owners contract with Vail/Beaver Creek Resort Properties, Inc. (VBC), another subsidiary of Vail Resorts. Among other services, VBC manages and operates condominiums “as . . . rental unit[s] within the [Lodge],” renting those condominiums to “transient guests” when unoccupied by the owners or their nonpaying guests. In return for these services, condominium owners pay VBC a management fee of forty percent of the gross rental proceeds (net rental management income). ¶ 4 Despite the differences in ownership, the hotel rooms and condominiums are physically integrated within the Lodge’s building envelope, sharing an elevator, several stairways, and hotel housekeeping and maintenance services. As a result, a typical resort guest might not know when they are in the hotel and when they are in the condominiums. ¶ 5 The Lodge also has a variety of amenities, including an outdoor pool and hot tubs, a spa, a fitness complex, a ski valet, restaurants, and internet access. Condominium owners offset the cost of these amenities via required condominium association dues. But transient guests staying in a hotel room or a condominium 
3 booked through VBC pay for these amenities through a nightly resort fee. B. The 2017 Assessment and the BAA’s First Order ¶ 6 For the 2017 tax year, the County included in its calculation of the Lodge’s assessed value the net rental management income that VBC received from its contracts with condominium owners. This inclusion resulted in an assessed actual value of $41,104,470, reflecting an increase from the previous assessment. LPI appealed the valuation to the County, which denied it. ¶ 7 LPI then appealed to the BAA, arguing that the County improperly included VBC’s net rental management income in the Lodge’s valuation and requesting that the Lodge’s assessed value be reduced to $22,800,000. ¶ 8 At a hearing, the BAA considered evidence regarding the Lodge’s actual value. LPI’s assessment excluded VBC’s net rental management income from the Lodge’s valuation because it considered that income to be an intangible asset. See § 39-1-118, C.R.S. 2023 (exempting intangible assets from the levy and collection of property tax). 
4 ¶ 9 In contrast, the County included VBC’s net rental management income in the Lodge’s valuation because, in its view, such income was a real estate ownership benefit that would be factored into the Lodge’s acquisition pricing. ¶ 10 Agreeing with LPI, the BAA concluded that the net rental management income “constituted an intangible asset that, while it might be considered in the valuation of a property outside of taxation, did not reflect additional value to” the Lodge. The BAA adopted LPI’s expert appraisal report that had excluded VBC’s net rental management income and — though no one gave it much attention at the time — some of the resort fees collected from transient guests (in fact, LPI’s expert testified that he was not aware that any resort fees had been excluded from the Lodge’s financial statements). After applying the tax-loaded capitalization rate and deducting personal property, the BAA assigned the Lodge an actual value of $26,245,000 for the 2017 tax year. C. The First Appeal ¶ 11 The County appealed the BAA’s order, asserting that the BAA erred when it 
5 (1) determined that a real property’s actual value is different from its market value for tax valuation purposes; (2) concluded that [the net rental management income] is an intangible asset and therefore excludable when establishing a real property’s actual value; and (3) relied on [LPI’s] expert appraiser’s adjusted financial statements that separated the ‘traditional’ hotel room operations from the condo operations and excluded hotel resort fees collected from [transient] guests. Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization, 2020 COA 138, ¶ 15 (Lodge I), rev’d, 2022 CO 9. ¶ 12 The Lodge I division agreed with the County on all three issues. For the first issue, the division concluded that the Lodge’s actual value had to be measured by its market value and that, because VBC’s net rental management income would be a factor considered by a willing buyer and seller of the hotel, such income had to be included in the Lodge’s valuation. Id. at ¶¶ 22-26. ¶ 13 As to the second issue, the division observed that the “income approach” to property valuation — the methodology applied by both parties’ appraisers — requires “calculating the income stream (rent) the property is capable of generating, capitalized to value at a rate typical within the relevant market.” Id. at ¶ 30 (emphasis omitted) (quoting Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., 
6 797 P.2d 27, 30 n.8 (Colo. 1990)). The division reasoned that VBC’s net rental management income was a revenue stream the Lodge was capable of generating and not an intangible asset because that income “is, in fact, cash; it is a tangible, inherent benefit in the form of money that is a direct product of the core income-producing business of [the Lodge].” Id. at ¶¶ 38-39. Thus, the division concluded that the BAA misvalued the Lodge by excluding as intangible a “measurable” and “identifiable” revenue stream “directly attributable to the [Lodge].” Id. at ¶¶ 40-42. ¶ 14 Regarding the final resort fees issue, the division concluded — based on LPI’s expert testimony — that the “resort fees are a revenue stream directly generated by [the Lodge] and should, therefore, be included under the income approach to [the Lodge’s] valuation.” Id. at ¶ 45 (citing E.E. Sonnenberg, 797 P.2d at 30 n.8). Because LPI’s expert appraisal report had, “in part,” excluded resort fees from its valuation, the division concluded that the BAA erred by not including those fees in the Lodge’s actual value calculation. Id. at ¶¶ 44, 46. 
7 D. The Appeal to the Supreme Court ¶ 15 LPI and the BAA each filed a petition for certiorari. It’s undisputed that neither asked the supreme court to review the portion of Lodge I that held resort fees should be included in the Lodge’s actual value calculation. ¶ 16 As relevant here, the certiorari petitions asked the supreme court to review the portions of Lodge I related to VBC’s net rental management income and whether that income should be included in the Lodge’s actual value under the income approach to valuation.
2 ¶ 17 The supreme court specifically granted review on two issues: 1. Whether the court of appeals erred by holding that a hotel’s contractual right to net rental income generated from separately owned, but physically integrated, condominium units is not intangible personal property that must be excluded under section 39-3-118, C.R.S. from the actual value of the hotel under the income approach to valuation in section 39-1-
103(5)(a), C.R.S. 2. Whether the court of appeals erred by holding, for the first time, that the net income generated from rentals of individually and separately owned condominium units to guests 2 The BAA’s certiorari petition raised a single question for review, while LPI’s petition raised three questions. 
8 of a hotel should be included in the actual value of the hotel under the income approach to valuation. Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization, 2022 CO 9, ¶ 1 n.1 (Lodge II). The supreme court didn’t grant certiorari on the portion of Lodge I that held resort fees should be included in the Lodge’s actual value calculation. ¶ 18 Considering the second certiorari question, the supreme court concluded that the Lodge I division had misconstrued “the foundation of the income approach to valuation” as “the capitalization of such income streams attributable to property ownership.” Id. at ¶ 43 (emphasis omitted) (quoting Lodge I, ¶ 39). The supreme court reiterated that the income approach requires an assessor to consider the income that the “[subject] property is capable of generating.” Id. (quoting E.E. Sonnenberg, 797 P.2d at 30 n.8). And, it continued, “[b]y including VBC’s net rental management income within the sweep of income ‘attributable to property ownership,’ the division impermissibly expanded the income approach to include in the Lodge’s valuation contractual rights to revenue generated by a different property.” Id. Thus, the supreme court held that “the net income generated from rentals of 
9 the individually and separately owned condominium units was not income generated by the Lodge and therefore should not have been included in the Lodge’s actual value under the income approach to valuation.” Id. at ¶ 2. ¶ 19 Given its disposition, the supreme court didn’t reach the first certiorari question: “whether the net rental income at issue also constituted intangible personal property, requiring that it be excluded from the Lodge’s valuation under the income approach.” Id. at ¶ 58. And with no discussion or mention of the portion of Lodge I’s holding that resort fees should be included in calculating the Lodge’s actual value, the supreme court “reverse[d] the judgment of the division below” and “remand[ed] this case for further proceedings consistent with this opinion.” Id. at ¶ 60. E. The Mandate and Modified Mandate ¶ 20 On remand from the supreme court, this court issued a mandate affirming the BAA’s order and returning the case to the BAA “for further proceedings consistent with the opinion of the Colorado Supreme Court.” Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization, (Colo. App. No. 19CA0266, June 8, 2022) (unpublished order). 
10 ¶ 21 The County then filed a motion “for stay of mandate to reconsider and clarify the mandate.” In it, the County explained that neither LPI nor the BAA asked the supreme court to address Lodge I’s resort fees holding, the supreme court didn’t grant certiorari on that issue, and the supreme court didn’t decide it. Thus, the County asserted that the law of the case applied to Lodge I’s resort fees holding and asked that the mandate be modified to reflect the “effective appellate rulings in this case.” The BAA took no position on the motion, but LPI opposed it, arguing, as relevant here, that the supreme court’s opinion and mandate reversed the entire judgment. ¶ 22 This court issued a modified mandate, directing “that the order of the [BAA] is affirmed in part” and returning the case to the BAA “for further proceedings consistent with the opinion of the Colorado Supreme Court.” Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization, (Colo. App. No. 19CA0266, July 25, 2022) (unpublished order) (emphasis added). F. The Remand Proceedings ¶ 23 Back before the BAA, the parties disagreed on the scope of the remand proceedings. Attempting to comply with the modified 
11 mandate, the BAA expressed its view that the modified mandate required it to address only the “very narrow issue” of “how the resort fee inclusion or exclusion . . . impacts the value.” Ultimately, the BAA permitted the parties to exchange “some brief documentary evidence” and introduce “very limited testimony, based on that very narrow issue.” ¶ 24 At the hearing, LPI began by acknowledging that $197,407 in resort fees had been excluded from its original expert appraisal report. But it then proceeded to parse the resort fees into two categories: resort fees “generated by the hotel,” and resort fees “generated by the [c]ontracts governing the relationship between the third-party condo owners and VBC.” ¶ 25 And despite the fact that LPI’s expert testified at the first BAA hearing that he was not aware that any resort fees had been excluded from the Lodge’s financial statements, at the remand hearing LPI introduced a different witness who testified that the financial statements (which the appraisal report relied on) had included the first category of resort fees (generated by the Lodge) but excluded the second category of resort fees (generated by VBC condominium rentals) because those fees were “an intangible 
12 revenue stream related to other property outside” the Lodge. Consistent with this theory but again contrary to expert testimony at the first BAA hearing, LPI’s new witness testified that “resort fees don’t actually give [g]uests access to the amenities” and that “[g]uests who don’t rent . . . a third-party-owned condo through VBC do not pay a resort fee” but “still have access to all the amenities.” Because the appraisal report that the BAA adopted had excluded the $197,407 in resort fees purportedly generated by VBC condominium rentals, LPI asked the BAA to affirm its original valuation of $26,245,000. ¶ 26 In contrast, the County asserted that, to follow the law of the case established by Lodge I and Lodge II, the BAA had to include for valuation the $197,407 of resort fees excluded by the expert appraisal report. The County again emphasized that certiorari review was neither sought nor granted on the portion of Lodge I’s holding that “resort fees are a revenue stream directly generated by [the Lodge],” Lodge I, ¶ 45, and argued that those fees should be included in the Lodge’s actual value under the income approach to valuation. 
13 ¶ 27 In its remand order, the BAA framed the remaining issue as “whether resort fees charged to guests of third-party owned condominiums managed by VBC are properly included within the income approach to property.” Crediting LPI’s new evidence, the BAA concluded that resort fees paid by those who rented the privately owned condominiums managed by VBC were a “revenue stream” to VBC and therefore were “not properly included within the valuation of” the Lodge. Thus, the BAA affirmed its original $26,245,000 valuation. ¶ 28 In this second appeal, the County again challenges the BAA’s order, arguing that the BAA erred by (1) failing to “adhere to the law of the case” with respect to Lodge I’s resort fees holding; (2) violating the judicial admissions and judicial estoppel doctrines; and (3) failing to apply established facts to the correct legal standard. II. Analysis ¶ 29 The County maintains that Lodge II didn’t disturb the portion of Lodge I’s holding that “resort fees are a revenue stream directly generated by [the Lodge] and should, therefore, be included under the income approach to [the Lodge’s] valuation.” Lodge I, ¶ 45 (citing E.E. Sonnenberg, 797 P.2d at 30 n.8). Thus, the County 
14 contends that the BAA erred by failing to follow the law of the case and by excluding $197,407 in resort fees from the Lodge’s valuation. Under these circumstances, we agree. ¶ 30 “Conclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case.” Super Valu Stores, Inc. v. Dist. Ct., 906 P.2d 72, 79 (Colo. 1995). The law of the case as established by an appellate court must be followed in later proceedings before the trial court,
3 see Cordell v. Klingsheim, 2018 COA 80, ¶ 12, and “is binding” in later appeals involving the same case, People v. Robbins, 87 P.3d 120, 122 (Colo. App. 2003), aff’d, 107 P.3d 384 (Colo. 2005); see also Simpson v. Yale Invs., Inc., 886 P.2d 689, 699 (Colo. 1994) (“When a case is remanded to the trial court and subsequently appealed, the reviewing court will consider only those issues arising after the remand and whether the trial court complied with the order of remand.”). 3 Neither LPI nor the BAA suggests that an agency — such as the BAA — is not required to follow the law of the case established by appellate courts. See, e.g., Copart, Inc. v. Admin. Rev. Bd., 495 F.3d 1197, 1201 (10th Cir. 2007) (noting the law of the case doctrine applies to administrative agencies on remand). 
15 ¶ 31 We review de novo whether the BAA (or trial court) followed the law of the case. See Owners Ins. Co. v. Dakota Station II Condo. Ass’n, 2021 COA 114, ¶ 21. ¶ 32 To start, we look at what Lodge I said about resort fees. And Lodge I plainly held that “the BAA should have included hotel resort fees as a revenue stream under the income approach to [the Lodge’s] valuation.” Lodge I, ¶ 43. Lodge I based this conclusion directly on LPI’s expert testimony. That expert confirmed that LPI collects resort fees “from all [transient] guests to cover the expenses [the] Lodge incurs in providing the guests with free amenities” and that those fees “go directly to [the] Lodge and not through” VBC. Id. at ¶ 44 (emphasis added); see also Lodge II, ¶ 12 (noting the resort fees afford guests “who stay at the hotel and those who rent a condominium” access to the Lodge’s amenities). And that expert explained that the resort fees are “income for [LPI]” and “pretty profitable for the [Lodge]” and that all transient guests — those that book through VBC or otherwise — get the same access to amenities. Thus, with support from the record before it, Lodge I concluded that resort fees are “a revenue stream directly generated” by the Lodge (not VBC) and directed the BAA on remand to include resort fees in 
16 the Lodge’s valuation (though the amount of those fees wasn’t known because it had been excluded from the expert appraisal report). Lodge I, ¶ 45.
4 ¶ 33 Neither LPI nor the BAA disputes this particular holding. Instead, they argue that law of the case doesn’t apply because by “revers[ing] the judgment of the division below” and “remand[ing] this case for further proceedings consistent with this opinion,” Lodge II, ¶ 60, the supreme court intended to reverse the entire judgment, not just the judgment as to the one certiorari issue it decided. ¶ 34 We see a couple of problems with this argument. For one, neither LPI nor the BAA asked the supreme court to review the portion of Lodge I that held resort fees should be included in the Lodge’s valuation (or even mentioned that portion of Lodge I’s holding in their certiorari petitions). And no one disputes that the supreme court didn’t grant certiorari to review that holding and 4 In the first appeal, the resort fees issue took up about a page in the parties’ respective appellate briefs. LPI generally asserted that the resort fees were properly allocated. But it didn’t argue that the resort fees paid by condominium guests (versus those paid by hotel guests) were generated by different property. 
17 instead granted certiorari on two “specific issues” — both related to the net rental income generated from the condominium units. Id. at ¶ 1 n.1. ¶ 35 Simply put, the supreme court only reviewed and decided whether VBC’s net rental management income should be included in the Lodge’s valuation, not the resort fees. And “[b]ecause our supreme court limits the scope of its review to the question presented on certiorari, we cannot presume that an issue beyond the question presented was decided.” Cordell, ¶ 14 (citations omitted); see also Fair v. Red Lion Inn, 943 P.2d 431, 433 n.1 (Colo. 1997) (“As our order granting certiorari does not address that conclusion [upholding a jury verdict on a contract claim], it remains the law of this case and will not be disturbed by our review.”); State v. Williams, 2013-0283, p.2 n.2 (La. App. 4 Cir. 9/7/16) (“[T]his court addressed and resolved the defendant’s eleven assignments of error. The Supreme Court granted certiorari and vacated this court’s judgment solely as to one of those assignments of error . . . . This court’s determination of the other ten assignments of error addressed in its original opinion was not disturbed and remains the law of the case . . . .”). 
18 ¶ 36 While we recognize that the supreme court has been more precise in its dispositional language, see, e.g., Rossmiller v. Romero, 625 P.2d 1029, 1029 (Colo. 1981) (reversing “that portion of the judgment of the court of appeals” on which the supreme court granted certiorari), we cannot agree that Lodge II reversed a portion of an appellate decision that no one asked the supreme court to review, it didn’t grant certiorari to review, and it neither considered nor decided.
5 Having so concluded, we necessarily disagree with the BAA’s related contention that the undisturbed portion of Lodge I wasn’t a final decision for purposes of the law of the case doctrine. Cf. Loc. 28 of Sheet Metal Workers’ Int’l Ass’n v. Equal Emp. Opportunity Comm., 478 U.S. 421, 441 (1986) (refusing to consider an issue raised in a third appeal that the court of appeals had twice affirmed because petitioners hadn’t sought certiorari review of either appellate judgment). 5 We have some broader concerns about the position staked out by LPI and the BAA. We often consider several issues in any given appeal. Adopting LPI and the BAA’s position would mean that if our supreme court reviewed and reversed a single issue in a criminal appeal, for example, the entire judgment would be reversed, including issues not reviewed or considered by the supreme court. 
19 ¶ 37 Second, the modified mandate undermines this argument. Though both LPI and the BAA make much of the fact that the modified mandate didn’t include “express instructions to enter a particular order” or otherwise direct the BAA to follow “any part of the division’s reversed judgment,” LPI and the BAA seemingly ignore that the modified mandate affirmed the BAA’s original order only “in part.” And the only part that could have been affirmed is the part that Lodge II resolved regarding the exclusion of VBC’s net rental management income from the Lodge’s valuation. See Lodge II, ¶¶ 57-60. That means the modified mandate didn’t affirm the portion of the BAA’s original order that excluded resort fees from the Lodge’s valuation. At the very least, that’s how we interpret the modified mandate. See Thompson v. Catlin Ins. Co. (UK) Ltd., 2018 CO 95, ¶ 24 (“A division of the court of appeals should have some elbow room in construing another division’s mandate to promote the efficient administration of justice.”). ¶ 38 Third, we are unpersuaded by LPI and the BAA’s contention that Lodge II implicitly overruled Lodge I’s resort fees holding. To get there, LPI and the BAA argue that Lodge II corrected the legal standard to the income approach to valuation and that Lodge I 
20 applied the incorrect standard by concluding that resort fees should be included in the Lodge’s valuation. But Lodge I’s resort fees holding is entirely consistent with the legal standard articulated in Lodge II. Indeed, Lodge II directs that income generated by the Lodge (and not VBC) is properly included in the Lodge’s valuation. See Lodge II, ¶¶ 32-34. And Lodge I plainly held that the “resort fees are a revenue stream directly generated by [the Lodge] and should, therefore, be included under the income approach to [the Lodge’s] valuation.” Lodge I, ¶ 45 (emphasis added) (citing E.E. Sonnenberg, 797 P.2d at 30 n.8). ¶ 39 Finally, Owners doesn’t require a different result. In Owners, an insurer and a condominium association disputed, among other things, whether a property damage appraiser had acted impartially as required by the insurance policy. Owners, ¶¶ 2-6. The trial court found that the appraiser had not acted improperly, and a split division of this court affirmed. Id. at ¶¶ 7-9. The supreme court reversed on that issue, concluding that the division majority had employed the wrong impartiality standard. Id. at ¶ 10. In doing so, the supreme court established the applicable standard for appraiser 
21 impartiality and remanded to the trial court to consider whether the appraiser’s conduct conformed to that standard. Id. ¶ 40 The remand court held a hearing to determine whether the appraiser’s conduct conformed to the correct impartiality standard and issued new findings and conclusions determining that the appraiser wasn’t impartial. Id. at ¶ 14. ¶ 41 The condominium association appealed to another division of this court, arguing that the remand court had failed to follow the law of the case. Id. at ¶ 20. In particular, it asserted that because “the supreme court reviewed only the appraiser impartiality standard and [a second issue not relevant here] . . . the other issues affirmed by the division majority remain the law of the case.” Id. at ¶ 27. The division rejected this argument because “the supreme court’s articulation of the correct impartiality standard — which differed from the standards applied by the trial court in the earlier decision and by the division majority in the prior appeal — necessarily affected all the issues going to [the appraiser’s] partiality.” Id. Thus, the remand court “appropriately followed the supreme court’s direction to determine whether [the appraiser’s] conduct conformed to this new standard.” Id. 
22 ¶ 42 But the facts and circumstances of Owners are very different from those here. First, unlike the resort fees holding here, Owners involved an issue that the supreme court actually reviewed and decided. ¶ 43 Second, the supreme court announced a “new standard” of impartiality in Owners, and the remand court properly considered whether the standard was satisfied. Id. But Lodge II reiterated the existing standard for the income approach to valuation and concluded the division erred when it “impermissibly expanded” that standard with respect to the net rental management income. Lodge II, ¶ 43. And the supreme court explained that an assessor employing the income approach need “do no more than determine which real property has generated the income at issue before including that income in the value calculation.” Id. at ¶ 55. That is the standard Lodge I used to conclude that resort fees should be included under the income approach to the Lodge’s valuation. See Lodge I, ¶ 45; cf. Lodge II, ¶ 43 (faulting the division only for including “VBC’s net rental management income” in the Lodge’s valuation, not any resort fees). 
23 ¶ 44 To the extent LPI and the BAA now push to characterize the inclusion of resort fees in the Lodge’s valuation as a factual matter (to which law of the case doesn’t apply), see Owners, ¶ 28, that’s not what LPI argued on remand to the BAA. Instead, it represented to the BAA that “whether the resort fees . . . should or should not be included” is “a legal matter.” And though we generally will not consider an argument advanced for the first time on appeal, see Gebert v. Sears, Roebuck & Co., 2023 COA 107, ¶ 25, we agree with the position advanced by LPI on remand, which is consistent with Lodge II’s related conclusion that whether VBC’s net rental management income should be included in the Lodge’s valuation is a question of law, Lodge II, ¶ 26. ¶ 45 All this said, we conclude that the BAA violated the law of the case by reopening the issue of whether resort fees should have been included in or excluded from the Lodge’s valuation.
6 6 We recognize and acknowledge the BAA’s diligent efforts to comply with the modified mandate. Some of the confusion regarding the modified mandate’s scope seems to have stemmed from the County’s efforts to introduce additional evidence and to litigate a separate issue beyond the mandate’s scope. 
24 ¶ 46 Having so concluded, we need not consider the County’s remaining arguments that the BAA erred by violating the judicial admissions and judicial estoppel doctrines or by failing to apply established facts to the correct legal standard. III. Disposition ¶ 47 We reverse the BAA’s order and remand with directions to include the $197,407 in resort fees in the Lodge’s valuation. The BAA shall do so based on the existing record. JUDGE YUN and JUDGE MOULTRIE concur.